UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAMIN EIVAZ,

    Plaintiff,

v.                                               Case No. 12-C-910

MARK JONATHAN EDWARDS, et al,

    Defendants.

**DECISION AND ORDER GRANTING IN PART MOTION TO DISMISS**

Defendant Mark Jonathan Edwards is a UK resident who founded, owned, and operated Red Dot Square Solutions (Red Dot) a UK company specializing in creating interactive retail worlds in virtual reality. In 2007, Plaintiff Ramin Eivaz was appointed to a Red Dot advisory council for a three-year term that was to begin on November 1, 2007. The letter appointing Eivaz is on Red Dot stationary and sets forth the terms and contractual relationship of the appointment. As compensation, the letter states that Eivaz would receive $500,000 per year. In the event the company was sold, however, the agreement provided that Eivaz would receive 10% of the company's value. The letter is signed by Mark J. Edwards, "Chairman and CEO." (ECF No. 1-1.) Eivaz accepted the appointment and performed the obligations set forth in the agreement by contributing his expertise and insight into developing a market strategy for Red Dot in assisting with the implementation of the marketing strategy. In 2008, Edwards formed defendant Red Magasin, Inc., a United States affiliate of Red Dot.

On February 4, 2009, Edwards sold a holding company which owned Red Dot and Red Magasin to WPP Holding (UK) Ltd., an international marketing company, for £4,926,738.35. The sale agreement also provided for a potential for additional payments over several years based on performance of the companies. In April 2009, Edwards personally paid Eivaz £135,000 ($200,000.00) as a "partial payment" against the sale proceeds Edwards received from WPP. In an April 6, 2009 email, Eivaz confirmed that he had received $200,000.00 from Edwards "as relates to our previously signed agreement." Eivaz stated that the amount represented "a portion of the first payment, which is £492,674 (10% of initial payment made to Mark Edwards for £4,926,738.35)." (Compl. Ex. D, ECF No. 1-4.) Eivaz' email noted there would be future agreement as to payment on the remaining balance and expressly declined interest until the following year. It envisioned future payments by Edwards based on additional payments by WPP. (*Id.*)

In response, Edwards noted that WPP had no knowledge of their agreement and that it was a private matter between him and Eivaz. (*Id.*) When Eivaz received no further payments from Edwards, he commenced this action against Edwards, Red Dot, and Red Magasin alleging claims for breach of contract against Edwards and Red Dot, and claims of promissory estoppel and unjust enrichment against those defendants and Red Magasin as well. Red Dot and Red Magasin now seek dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**1. Breach of Contract Claim**

Although his complaint is confusing on the question, Eivaz concedes that he did not intend to assert a breach of contract claim against Red Magasin. The complaint does state such a claim against Red Dot, however, and Red Dot's motion to dismiss Eivaz' breach of contract claim will

2

be denied. Edwards signed the agreement giving Eivaz a right to 10% of the value of Red Dot upon its sale as the Chairman and CEO of Red Dot. There is no suggestion that Edwards lacked the authority to bind Red Dot as its agent. The contractual obligation is therefore Red Dot's and, if breached, the liability is Red Dot's as well.

Red Dot argues, however, that the obligation to pay Eivaz 10% of the purchase price paid by WPP can only belong to Edwards. Red Dot notes that Eivaz admits that he already received partial payment from Edwards, and in his email response to Eivaz, Edwards acknowledges that the agreement for payment of the portion of the purchase price due Eivaz was between him and Edwards. In fact, Edwards states that "WPP [has] no knowledge of our agreement." (*Id.*) Red Dot further contends that "only Edwards could enter into a sale-price-sharing agreement with Eivaz because Red Dot would not have access to the sales proceeds." (ECF No. 18, at 6.) Thus, Red Dot contends Eivaz' breach of contract claim against Red Dot is not even plausible and should be dismissed.

At this point, the breach of contract claim against Red Dot will remain in the case. As already noted, Eivaz' contract is with Red Dot. Although Edwards may also be liable under the same or a separate contract, this does not change or alter Red Dot's liability under the original agreement. Red Dot promised that Eivaz would receive 10% of its value if it was sold. While it is true that Red Dot does not have access to the funds used to purchase it, money is fungible. Because the contractual obligation was Red Dot's, the liability for its breach also belongs to Red Dot. And even if it is true that, as Red Dot explains, "Red Dot could never have been obligated to pay Plaintiff a portion of the sales price, as the sale proceeds would have flowed from the buyer to the seller (i.e., Edwards), and would never have been in Red Dot's possession" (Defs. Br. in

3

Supp. 14, ECF No. 14), the practical impossibility of Red Dot to perform its promise to pay Eivaz is not an absolute bar to liability. *See In re Zellmer's Estate*, 1 Wis. 2d 46, 49, 82 N.W.2d 891 (1956) (adopting RESTATEMENT (FIRST) OF CONTRACTS § 456 rule that "a promise imposes no duty if performance of the primise [sic] is impossible because of facts existing when the promise is made *of which the promisor neither knows nor has reason to know*" (emphasis in original)).

If Edwards failed to disclose Red Dot's agreement with Eivaz to WPP, Edwards may be liable to either WPP or Red Dot, depending on whether he had a duty to disclose it. But that issue is not before me. And the fact that Edwards may have agreed separately that he would pay Eivaz his share of the purchase price does not change Eivaz' contract with Red Dot. Accordingly, the motion to dismiss Eivaz' breach of contract claim against Red Dot is denied.

**2. Promissory Estoppel and Unjust Enrichment Claims**

Red Dot and Red Magasin also move for dismissal of Eivaz' promissory estoppel and unjust enrichment claims against them. To prevail on a claim of promissory estoppel, a plaintiff must prove the following three elements: (1) a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) action or forbearance on the part of the promisee in reliance on the promise; and (3) injustice can be avoided only by enforcement of the promise. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 698, 133 N.W.2d 267, 275 (1965). To prevail on a claim of unjust enrichment, the plaintiff must prove: (1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it

4

without paying the value thereof. *Admiral Ins. Co. v. Paper Converting Mach. Co.*, 2012 WI 30, ¶ 46, 339 Wis.2d 291, 811 N.W.2d 351 (2012).

Red Dot and Red Magasin contend that Eivaz has failed to allege a plausible claim of promissory estoppel against either of them. To state a claim, a complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (2009). To survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (quoting *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009)).

The motion to dismiss the promissory estoppel claim against Red Magasin will be granted. The complaint fails to allege with any specificity that Red Magasin made any promise to Eivaz. In fact, Red Magasin did not exist at the time Eivaz entered into the contract with Red Dot. Absent a plausible allegation that Red Magasin made a promise to Eivaz, his claim for promissory estoppel must be dismissed. Although Eivaz alleges that Defendants promised "10% of the sale price of Red Dot Solutions/Red Magasin, if sold" (Compl. ¶ 38), this allegation is fundamentally at odds with the alleged contract giving rise to the promise because it was solely between Red Dot and Eivaz as Red Magasin did not exist at the time. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 991 (7th Cir. 1991) ("[W]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must

5

prevail over the averments differing therefrom.'" (quoting *Foshee v. Daoust Const. Co.*, 185 F.2d 23, 25 (7th Cir. 1950))).

The motion will also be granted as to the unjust enrichment claim against Red Magasin. Eivaz alleges that his "work and contributions were also for the benefit of Red Magasin." (Compl. ¶ 21.) Other than this allegation, Eivaz provides no factual support that he conferred a benefit on Red Magasin for which he was not duly compensated. This single allegation is wholly conclusory and is insufficient to state a plausible claim to relief. Eivaz' argument that he pleaded additional factual support for his unjust enrichment claim in paragraphs 43 to 47 against Red Magasin is without merit because these additional allegations amount to a formulaic recitation of the elements of the claim, which is insufficient. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). In sum, Eivaz' promissory estoppel and unjust enrichment claims against Red Magasin are dismissed because the allegations in the complaint are insufficient to state a plausible claim on its face.

The motion to dismiss Eivaz' promissory estoppel and unjust enrichment claims against Red Dot will be denied, however. Red Dot contends that Eivaz' claims against it must be dismissed because he alleges that he had a valid contract with the defendants. (*See, e.g.*, Compl. ¶¶ 37, 43-44.) Under Wisconsin law, a promissory estoppel or unjust enrichment claim can only apply in the situation where the services performed were not covered by the parties' contract, where the contract is invalid, or where the contract is unenforceable. *See Gorton v. Hostak, Henzl & Bechler*, 217 Wis. 2d 493, 510 n.13, 577 N.W.2d 617 (1998) (holding that where an "award is governed by the contract existing between the parties, quantum meruit and implied contract

6

arguments are inapposite"). Red Dot thus argues that because Eivaz alleges that a valid contract existed in his claims for promissory estoppel and unjust enrichment, his claims against Red Dot necessarily fail. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) ("When analyzing the sufficiency of a complaint, we . . . accept well-pleaded facts as true").

Eivaz responds, however, that Rule 8(d)(2) of the Federal Rules of Civil Procedurfe allows a plaintiff to allege alternative and inconsistent claims. While Eivaz' claims for promissory estoppel and unjust enrichment are facially invalid because he incorporated his allegations that a valid contract existed, the deficiency is easily curable. It makes little sense to dismiss Eivaz' claims on a mere technicality when he can easily re-plead the same claims in the alternative. *See Harley Marine Servs., Inc. v. Manitowoc Marine Group, LLC*, 759 F. Supp. 2d 1059, 1061-62 (E.D. Wis. 2010). In addition, the present situation is unlike that in *American Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356 (N.D. Ga. 2006), where the court granted a motion to dismiss on the ground that even if the plaintiff clearly asserted alternative theories of quasi-contract, those claims were superfluous when both parties acknowledged the validity of their contract. By way of contrast to *American Casual Dining*, Red Dot disputes the validity of the contract with Eivaz. (*See* Answer ¶¶ 3, 8; *see also* Defs. Br. in Supp. 16 n.4.)

Though it is doubtful the claims will ultimately survive, Eivaz alleges sufficient factual content to state plausible claims of promissory estoppel and unjust enrichment against Red Dot. Because Eivaz' promissory estoppel and unjust enrichment claims against Red Dot can be sufficiently pled as alternative theories of recovery and there is a dispute as to the validity of the contract, the claims against Red Dot will not be dismissed. Rather than require Eivaz to file an

7

Case 1:12-cv-00910-WCG   Filed 03/13/13   Page 7 of 8   Document 19

amended complaint, the court will simply construe his promissory estoppel and unjust enrichment claims against Red Dot as in the alternative to his breach of contract claim.

Finally, Defendants urge that Eivaz be equitably estopped from seeking payment from Red Dot or Red Magasin. Defendants contend that because Eivaz only sought payment from Edwards personally and did not request payment from Red Dot or Red Magasin for more than three years, his conduct provides sufficient grounds for equitable estoppel. This is an affirmative defense, however, that cannot be decided based on the pleadings alone. There are no allegations in the complaint from which the court could conclude that Eivaz' claims are barred. *Cf. Independent Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (stating that "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate").

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. The motion is denied as to the claims against Red Dot. As to the claims against Red Magasin, the motion is granted, but the dismissal is without prejudice.

**SO ORDERED** this  13th  day of March, 2013.

                                              s/ William C. Griesbach
                                              William C. Griesbach, Chief Judge
                                              United States District Court