UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAMIN EIVAZ,

          Plaintiff,

v.                                                 Case No. 12-CV-910

MARK JONATHAN EDWARDS and
RED DOT SQUARE SOLUTIONS,

          Defendants.

**DECISION AND ORDER GRANTING RECONSIDERATION AND FEES**

Plaintiff Ramin Eivaz has filed a motion requesting reconsideration of the court's September 19, 2014 order granting the defendants' motions for sanctions, which dismissed with prejudice Eivaz's claims against the defendants and ordered Eivaz and/or his attorney to pay Red Dot Square Solutions' attorneys' fees and costs incurred in bringing its motion for sanctions. Eivaz contends the court erred in finding he willfully violated the court's discovery order by failing to produce financial documents and by unjustifiably walking out of a court-ordered deposition. After careful consideration of the entire record, I now conclude that facts on which I based my decision were less clear than I thought and that dismissal is too drastic a sanction under the circumstances. Eivaz's motion will therefore be granted.

As an initial matter, Red Dot argues Eivaz's motion is frivolous and violates the certification requirement of Rule 11 of the Federal Rules of Civil Procedure because Eivaz fails to raise a question of manifest error of law or fact or present newly discovered evidence. It is true that these are the standards that generally warrant reconsideration. *See, e.g.*, *Lacy v. Cole*, No. 11-CV-1084, 2012

WL 441284, *1 (E.D. Wis. Feb. 10, 2012) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)) ("Motions to reconsider (or more formally, to revise) an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e): to correct manifest errors of law or fact or to present newly discovered evidence.").

At the same time, district courts have inherent authority to reconsider interlocutory orders any time before final judgment is entered. *See Marconi Wireless Telephone Co. v. United States*, 320 U.S. 1, 47–48 (1943); *Fidelity Trust Co. v. Board of Ed. of City of Chicago*, 174 F.2d 642, 645 (7th Cir. 1949); *Acme Printing Inc. Co. v. Menard, Inc.*, 891 F. Supp. 1289, 1294–95 (E.D. Wis. 1995); *see also* Fed.R.Civ.P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Reconsideration is a useful mechanism when the court has clearly erred and immediate correction will save time and expense in the long run. Such a clear error may be based on the court's patent misunderstanding of a party, because the court "made an error not of reasoning but of apprehension" or because justice simply requires it. *See Bank of Waunakee v. Rochester Cheese Sales Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Acme Printing*, 891 F. Supp. at 1295. It is not unreasonable to request such relief when a party believes one or more of these circumstances exist, particularly when the court has imposed the drastic sanction of dismissal.

Eivaz and his former attorney have each admitted to the court that their actions leading to the imposition of sanctions were improper. (ECF Nos. 79 & 86.) They contend, however, that their actions were not so egregious as to warrant dismissal of Eivaz's claim against the defendants.

2

Eivaz's claim against Red Dot and Edwards is based on an alleged contract with Red Dot signed by Edwards in his capacity as president of Red Dot. Under the terms of the alleged agreement, Eivaz was to receive an annual salary, as well as 10% of the purchase price for Red Dot upon sale. Eivaz claims that the total amount to which he is entitled under his contract with Red Dot is in excess of $1 million. As the court's decision granting the defendants' motions for sanctions suggests, it is far from clear that Eivaz's claim is valid. But a motion for sanctions is not a motion to dismiss because the plaintiff's claim lacks merit. Assuming the complaint states a claim, whether there is sufficient evidence to prove it is more appropriately determined on summary judgment or at trial than on a motion for sanctions.

This is not to say that the merits are irrelevant to a motion for sanctions. Indeed, the Seventh Circuit has made clear that "it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute." *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir. 1993). As *Ball* explains, lack of merit of a case can often shed light on the motive a party or attorney may have for dilatory or evasive conduct and, where it does, dismissal is even more clearly warranted:

> If it appears that the suit is unmeritorious, the inference may arise that the lawyer's dilatory and evasive conduct is designed to force an unjust settlement by imposing cost and uncertainty on the defendant. Furthermore, the less meritorious the suit, the less likely is it that dismissing it will impair the deterrent and compensatory objectives of the law under which the plaintiff was proceeding, by letting a wrongdoer get off scot-free.

*Id.*

On the other hand, the Seventh Circuit has also made clear that dismissal is a harsh sanction that should only be used when "there is clear and convincing evidence that the party against whom the sanction is imposed displayed willfulness, bad faith, or fault." *Maynard v. Nygren*, 332 F.3d 462,

3

467–68 (7th Cir. 2003). The court has also cautioned that "[i]n the absence of contumacious conduct or a clear record of disobeying court orders, it is an abuse of discretion to dismiss without first firing a warning shot or imposing other lesser sanctions." *Beyer v. Cormier*, 235 F.3d 1039,1041 (7th Cir. 2000). Moreover, where the sanction is for violating a court order, the order must be clear and unambiguous. While a formal, written order to comply with discovery requests is not required, the court's directive must unequivocally direct the party to provide the requested discovery. *Halas v. Consumer Services, Inc.*, 16 F.3d 161, 164 (7th Cir. 1994). Finally, the sanction imposed must be proportionate to the violation, especially in cases where the sanction is dismissal:

> We often have noted that the interests of justice are best served by resolving cases on their merits; consequently, the sanction of dismissal with prejudice must be infrequently resorted to by district courts in attempting to control their dockets and extirpate nuisance suits. . . . This ultimate sanction is reserved for cases in which the offending party has demonstrated wilfulness, bad faith, or fault. Absent these circumstances, the careful exercise of judicial discretion requires that a district court consider less severe sanctions and explain, where not obvious, their inadequacy for promoting the interests of justice.

*Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) (internal quotations, citations and brackets omitted).

Having further considered the entire record, I now conclude that the severe sanction of dismissal is not warranted in this case. This is not to say that the conduct of Eivaz and his attorney are not deserving of a sanction. And as the court's decision granting the defendants' motion makes clear, Eivaz violated the court's order that he provide the financial statements he completed during the relevant time period after he claimed to have entered the contract with Red Dot; he also violated the court's order granting Red Dot's motion for an extended deposition by walking out before Red Dot's attorney had completed his examination. But based on the affidavits of Eivaz and his attorney,

I now conclude that neither acted in willful contempt of the court's orders. Eivaz acted in reliance on the advice of his attorney, and his attorney failed to appreciate the seriousness and intent of the court's orders. More importantly, I am convinced that neither violation is so prejudicial and harmful to the defense that a lesser sanction will not suffice.

Of course, neither Eivaz's reliance on his attorney's advice, nor his attorney's misunderstanding of the court's intent constitute complete defenses for their conduct. As I noted in my original decision, "the law in this circuit is that an attorney's conduct must be imputed to his client in *any* context." *United States v. Di Mucci*, 879 F.2d 1488, 1496 (7th Cir. 1989) (emphasis in original). Thus, the fact that Eivaz was relying on the advice of his attorney does not absolve him of responsibility. And although I am now convinced that his attorney did not appreciate the intent of the court's orders, I do not believe they were so unclear that his failure to appreciate them was justified.

It is true that in the course of the telephone hearing on Red Dot's motion to compel the court initially explained to the parties what it was inclined to order and said that the parties should not consider it final until the court said it was final. (ECF No. 51-7 at 27.) Nevertheless, it is clear that Eivaz was to produce the financial documents requested by Red Dot within ten days of the hearing. After stating that the requested records were clearly relevant and should have been produced already, the court asked Eivaz's attorney if it was reasonable for him to provide them in ten days. Counsel responded "that's fine, Your Honor." (*Id.* at 27–28.) Although the court never said its order was final, it concluded the call, telling the parties that "I've heard enough for today, and hopefully you have rulings that will allow you to avoid further briefing and go forward." (*Id.* at 35.) Unfortunately, no written order was entered, and while the court used the word "ruling" in

5

describing its directions to Eivaz's counsel, the minutes of the hearing suggest that the court facilitated an agreement between the parties. (ECF No. 45.)

In the absence of a written order, Eivaz's counsel simply instructed his client to produce the financial documents relating to a condominium purchase and refinance that Red Dot's attorney had referenced in his motion, as opposed to the financial statements he had submitted in connection with several other transactions during the relevant time period. When Red Dot brought up the other transactions at his deposition, Eivaz admitted there were other documents he had failed to produce. Eivaz explained, however, that he did not list Red Dot as a source of income or asset in the loan applications for those transactions because he had agreed to defer his salary from Red Dot and he was unsure of what its value would be when and if sold. Shortly after the deposition, Eivaz produced the documents confirming his testimony that he had not listed any income or interest in Red Dot.

In my decision granting Red Dot's motion, I acknowledged the overly broad and confusing wording of Red Dot's Rule 34 Request, but rejected Eivaz's argument that this excused his failure to produce the documents. I concluded that the Request had been sufficiently clarified in letters from Red Dot's attorney and at the hearing, and in any event, Eivaz had not objected earlier on the ground that he did not understand what was requested. I also noted that his admission that he had such documents at his deposition suggested that his affidavit submitted in response to Red Dot's motion to compel, in which he stated he had conducted an exhaustive search and produced what he found, was at least in reckless disregard of the truth. But while these findings certainly support the imposition of a sanction, I am now convinced that dismissal is too severe given the lack of formality in the court's order, the marginal relevance of information sought and the absence of prejudice

caused by the failure to produce them earlier.

More troubling, in the court's view, was Eivaz's failure to complete his deposition. Although Eivaz contends that the court did not explicitly state that the extended deposition had to be completed in one sitting, that was clearly the intent of the court. As the court explained in granting the motion for an extended deposition, it was trying to avoid a situation where Red Dot could not complete its examination of Eivaz in the seven hours Rule 30 allowed and then have to come back to court to move for leave to continue the deposition at a later date on which everyone would have to fly back together. (ECF No. 51-7 at 29.) This was only reasonable given the distances between the attorneys' offices and Eivaz's residence, and the difficulties they had previously experienced in scheduling depositions.

Eivaz, having not attended the hearing, did not know this and consulted with his attorney before booking his flight for the early afternoon of the second day of the scheduled deposition. His reason for booking the flight so early on the second day was to avoid an additional night in Green Bay before flying back to Florida. His attorney had approved his request, apparently believing that the deposition would be completed in time for him to make the flight. Although Eivaz and his attorney offered to stay late the night of the first day so the deposition could be completed early, I concluded in my earlier decision that this did not absolve Eivaz of responsibility. I noted that while counsel for Eivaz told Red Dot's attorney of his return flight reservation on the first day, no more was said about it until shortly before Eivaz terminated the deposition on the second day, even though Red Dot's attorney had told him there was no way he could complete the deposition by then. I also concluded that at the time Eivaz offered to continue the deposition until the late hours of the first

7

day, he had not made clear that he would be leaving by 11:00 a.m. the next day, despite being told the deposition could not be completed by then. I also noted that Red Dot's attorney was not required to continue the deposition late into the evening so Eivaz could catch an early flight in any event.

Based on the record now before me, I remain convinced that Eivaz and his attorney acted improperly by terminating the deposition early. I am not convinced, however, that their motivation was to deprive Red Dot of a full opportunity to complete the deposition in willful violation of the court's order. By way of background, Eivaz's counsel notes that counsel for Red Dot had adjourned co-defendant Edwards' deposition without completing it in New York only ten days earlier without objection. He also notes that Eivaz had previously incurred substantial expense in flying to Green Bay from Florida to attend his scheduled deposition only to have it cancelled at the last minute due to sudden illness of Red Dot's attorney. Finally, the history of the case reveals numerous accommodations between the parties to address travel schedules, other commitments, and even a hurricane. Given this history and his offer to continue the deposition the night before, I conclude that counsel failed to appreciate the importance of continuing the deposition even if it meant his client having to stay in Green Bay an additional day. While this failure does not excuse counsel's actions, it is not of such a character as to warrant dismissal of his client's case when lesser sanctions are sufficient.

In concluding otherwise in my earlier decision, I accepted the argument of Red Dot and Edwards that Eivaz would have an unfair advantage if his case was not dismissed and he was allowed to complete his deposition because he would have advance knowledge of Red Dots's questions, the documents it would use and its defenses and strategies. As to Edwards, the argument that it would

8

be unfair makes little sense, since Edwards' attorney completed his questioning on the first day and was not even present on the second day. But even as to Red Dot, I am not convinced that Eivaz will reap any advantage from the delay. By the time the deposition is continued, Red Dot's attorney may well be better armed on the issue of the missing emails and the questionable dates on the few that survived. It may also by this time have access to whatever emails Edwards was able to produce. In sum, there is no reason to believe that the interruption will confer an advantage on Eivas any more than the interruption of Edwards' deposition will help him and the court erred in concluding otherwise.

The court also noted in its earlier decision that the seriousness of the violations was compounded by Eivaz's response to Red Dot's motion for sanctions. Rather than offer the kind of explanation and limited apology that Eivaz and his former attorney have now presented, his original response to Red Dot's motion was to accuse Red Dot's counsel of conduct "beyond the pale" for even seeking sanctions. Eivaz and his attorney also claimed their termination of the deposition was justified because counsel for Red Dot wasted time over the course of the deposition by simply reading emails. After reading the deposition transcript, the court concluded that Red Dot's attorney had not wasted time and simply read emails verbatim for no purpose other than delay. Instead, the court concluded that deposition moved slowly because Eivaz's answers were evasive, inconsistent and at times conflicting. While the court remains convinced that its assessment was essentially correct, this is at most an aggravating factor and not a reason to dismiss Eivaz's case. It is sufficiently taken into consideration by ordering Eivaz and/or his attorney to pay Red Dot's attorneys' fees, which are of course higher because of the need to respond to such arguments.

In conclusion, wholly aside from the apologies and the additional facts Eivaz and his new attorneys have presented in support of the motion for reconsideration, I conclude that dismissal of Eivaz's case was too severe a sanction to impose under the circumstances. Payment of the costs that will be incurred by Red Dot and Edwards to continue Eivaz's deposition at a mutually convenient time and place, and the attorneys fees and costs incurred by Red Dot in its motion for sanctions is sufficient, particularly considering the amount of fees Red Dot incurred.

Counsel for Red Dot has submitted a fee request for a total of $195,170.35. Counsel concedes, however, that this is not the amount that Red Dot actually paid his firm for its work on the motion. Due to a courtesy discount counsel's firm provided to Red Dot's parent company for its work on the case, $77,702.50 incurred on the sanctions motion was not paid. Thus, the total amount of fees and costs Red Dot paid is $117,467.85. Despite this fact, counsel for Red Dot argues that Red Dot is entitled to the entire amount invoiced. He contends that the discount provided was simply a courtesy and was not due to any objection by Red Dot over the hours or services provided.

Eivaz, on the other hand, contends that the amount requested is so grossly exorbitant that the court should simply deny fees altogether. Eivaz challenges both the hourly rates charged by Red Dot's New York law firm and the number of hours the firm claims it expended. Eivaz does not offer specifics, however. His argument is simply that $650 per hour is too high an hourly rate for this kind of case and that the number of hours claimed for the sanctions motion is so disproportionate to the issues raised that its request is patently absurd. Eivaz also notes that Red Dot only prevailed on two of the four issues it raised in its motion. The court rejected Red Dot's argument that Eivaz had intentionally destroyed emails and wrongfully failed to produce other documents. Based on these

facts, Eivaz argues that the amount of fees should at least be reduced.

It is true that a district court has the discretion to deny a request for attorneys' fees in its entirety when the amount of the request is so outrageously excessive as to shock the conscience of the court. *Brown v. Stackler*, 612 F.2d 1057 (7th Cir.1980); *Fair Housing Council of Greater Washington v. Landow*, 999 F.2d 92, 96-97 (4th Cir.1993). The same is true for the court of appeals. *Budget Rent-A-Car System, Inc. v. Consolidated Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005). Though the fee request submitted by Red Dot is extremely high, I do not question either the hourly rates claimed nor the hours expended. Nevertheless, I find the amount sought excessive given the issues before the court and the nature of the case. Counsel elected to file what he concedes is a kind of summary judgment motion, as opposed to a motion seeking sanctions for the misconduct that he believed Eivaz and his attorney had committed. Presumably, the "courtesy discount" granted by the firm reflects a similar conclusion that the amount of work done on the motion was in excess of what the issue reasonably warranted, given the circumstances of the case. At the same time, it was the conduct of Eivaz and his attorney that created the necessity for the motion, and the manner in which they responded only increased the fees and costs needed to reply.

Based on all of these considerations, I conclude that an award of $117,467.85 in attorneys' fees and costs is reasonable and order Eivaz and/or his attorney to pay such amount as a sanction for the violations cited above. They are also to pay the costs that will be incurred by Red Dot and Edwards to continue Eivaz's deposition at a mutually convenient time and place. It should go without saying that any further violations will be met with dismissal and further fees. And if, as Red

Dot argues, Eivaz's entire claim is fraudulent, judgment will be entered against him for the costs of Red Dot's entire defense. The clerk is directed to place this matter on the court's calendar for a telephone hearing to discuss further scheduling.

**SO ORDERED** this  5th  day of January, 2015.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court